IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED JAN - 7 2014 CLERK, U.S. DISTRICT COURT ALEXANDRIA, VIRGINIA

HARRY LENZY WALLACE, )
)
    Plaintiff, )
)
v. ) 1:13cv01330 (LMB/TCB)
)
MICHAEL CHAPMAN, et al., )
)
    Defendants. )

MEMORANDUM OPINION

On October 23, 2013, plaintiff pro se filed a 35-count Complaint alleging various causes of action against the Sheriff of Loudoun County, two medical personnel, a records clerk, and several deputy sheriffs and officers seeking $170,924,035 in damages resulting from various violations of federal and state statutes and constitutional provisions. On December 6, 2013, defendant nurses Agatha Patricia Tuparan and Lucille A. O'Grady (the "medical defendants") filed a motion to dismiss [Dkt. No. 41], and defendant Tuparan, along with 23 other, non-medical, sheriff's department defendants filed a motion to dismiss [Dkt. No. 36].

Consistent with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Civil Rule 7(K), both pending motions to dismiss were accompanied by notices advising plaintiff that he had twenty-one days from the date on which the motions were filed to respond to them [Dkt. Nos. 38, 41]. Plaintiff was also advised that the Court could

1

dismiss this action on the basis of defendants' papers if he did not file a response.

Rather than filing an opposition to the motions to dismiss, on December 27, 2013, twenty-one days after defendants' motions were filed and within the time period in which a plaintiff may amend his complaint as of right under Fed. R. Civ. P. 15(a)(1)(B), plaintiff filed a pleading captioned as a complaint, although it also contained a request for leave to file an amended complaint. Accordingly, the pleading was docketed as a motion for leave to file an amended complaint [Dkt. No. 45].

It appears that plaintiff's amendment was intended at least in part to respond to defendants' motions to dismiss because the amended complaint omitted many of the state statutory and constitutional claims that were the subject of the motions to dismiss. The remaining ten counts in the amended complaint, however, contain the same legal defects addressed in the motions to dismiss, which will be granted.

## I. BACKGROUND

Plaintiff, who describes himself as an older, African-American male, was arrested around 4:00 a.m. on January 24, 2012, pursuant to a Maryland arrest warrant dated April 4, 1991, and taken to the Adult Detention Center ("ADC") in Loudoun County, Virginia, where he remained incarcerated for nine days. Plaintiff's First Amended

2

Complaint ("FAC") ¶¶ 7, 29. Plaintiff alleges that after being placed in a holding cell at the ADC, he experienced chest pains but was not able to see a medical professional until 30 to 45 minutes after alerting defendants. FAC ¶¶ 14-15. Plaintiff was examined and then placed in another cell. FAC ¶¶ 17, 20.

Plaintiff further alleges that from January 24, 2012, until February 2, 2012, he was let out of his cell only to appear before a judge in a video conferencing room and to shower twice, but that he was never allowed to exercise outside of his cell. FAC ¶¶ 23, 26, 32. On February 2, 2012, defendants received a facsimile requesting that the charges against plaintiff be dismissed, and three to four hours later plaintiff was released from the ADC. FAC ¶¶ 33-36.

## II. DISCUSSION

The FAC alleges ten causes of action under 42 U.S.C. §§ 1983 and 1985(3) and the Fourteenth Amendment to the United States Constitution, and one cause of action under state law. FAC at 16-20. Together, the counts relate to (1) the allegedly delayed medical treatment plaintiff received for his chest pains; (2) confinement to a cell for nine days with minimal shower and recreation time; (3) the delay in releasing plaintiff from custody; and (4) certain defendants' failure to supervise those other defendants who interacted directly with plaintiff.

A. <u>Standard of Review</u>

Pleadings filed by a <u>pro se</u> party must be "liberally construed" and will not be held to the same standards as those filed by lawyers. <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (internal quotations and citations omitted). Nevertheless, whether the complaint states a claim on which relief may be granted is determined by "the familiar standard for a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." <u>Sumner v. Tucker</u>, 9 F.Supp.2d 641, 642 (E.D. Va. 1998).

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must assume the facts alleged in the complaint are true and draw all reasonable inferences in the plaintiff's favor. <u>Burbach Broadcasting Co. of Del. v. Elkins Radio Corp.</u>, 278 F.3d 401, 406 (4th Cir. 2002). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). Accordingly, a party must "nudge[] their claims across the line from conceivable to plausible" to survive a Rule 12(b)(6) motion to dismiss. <u>Id.</u> at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). In addition, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of

4

misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### B. Medical Attention and Conditions of Confinement (Counts I - VI)

Defendants argue that plaintiff's allegations concerning his chest pains and nine-day confinement without exercise are insufficient to establish a deprivation of a serious need or deliberate indifference to such need on the part of defendants. Memorandum and Points of Authority in Support of Defendants' Motion to Dismiss ("Defs.' Mem.") at 7, 8-9; Memorandum in Support of Defendants' Motion to Dismiss ("Medical Defs.' Mem.") at 3-5.[1]

To support a claim of a denial of reasonable medical care, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). Thus, a plaintiff

---

[1] The medical defendants also argue that because plaintiff has failed to allege any injury resulting from the passage of 30 to 45 minutes between the time he alerted them about his chest pains and the time he was examined, his claims under 42 U.S.C. §§ 1983 and 1985 fail as a matter of law. Medical Defs.' Mem. at 5-7. In addition, the medical defendants argue that plaintiff has failed to properly allege a conspiracy in support of any claim under 42 U.S.C. § 1985. Id. at 8-9. Because the Court finds that plaintiff has failed to plead even a prima facie cause of action for denial of medical or other needs in violation of the Constitution, it need not also address these other arguments.

must first demonstrate a sufficiently serious medical need. Second, a plaintiff must show deliberate indifference to that serious medical need; mere negligence or malpractice is not enough to constitute an Eighth Amendment violation. Id. at 106; Daniels v. Williams, 474 U.S. 327, 328 (1986); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A prisoner's disagreement with medical personnel over the course of his treatment does not make out a cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam); Harris v. Murray, 761 F.Supp. 409, 414 (E.D. Va. 1990).

Here, plaintiff has failed to allege either prong necessary to state a claim for denial of his Eighth Amendment right to reasonable medical care. First, plaintiff has not alleged that he had a sufficiently serious medical need, and instead claims only that he had chest pains that "made him think that he could be having a heart attack," FAC ¶ 14 (emphasis added), for which he admittedly received medical attention. Moreover, being seen by medical personnel within 30 to 45 minutes does not constitute a sufficient factual basis to establish deliberate indifference on the part of any of the defendants. For these reasons, the claims against the medical defendants will be dismissed.

Similarly, plaintiff's allegations regarding his confinement fail as a matter of law. To state a claim of cruel and unusual

6

punishment based on the conditions of confinement, a plaintiff must allege: (1) an objectively serious deprivation of a basic human need, one causing serious physical or emotional injury, and (2) that prison officials acted with deliberate indifference to those needs. Farmer v. Brennan, 511 U.S. 825, 834 (1994); see Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (defining serious deprivation as evidence of a serious medical and emotional deterioration attributable to the challenged condition). As to the first prong, the Supreme Court has stated that "[t]he Constitution, 'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991) (citing Rhodes v. Chapman, 452 U.S. 337, 347, 349 (1981)). Thus, the deprivation must result in a serious injury to the prisoner. Strickler, 989 F.2d at 1381 ("If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the [Eighth] Amendment.").

Here, again, plaintiff has failed to allege any facts to support either prong necessary for a claim of cruel and unusual punishment. Plaintiff points to no deprivation of a life necessity, nor does he allege any actual deliberate indifference by defendants to his needs.

Plaintiff merely makes conclusory statements that defendants were deliberately indifferent. Plaintiff also does not allege that any of the deprivations he complains of resulted in serious injury. Accordingly, plaintiff has failed to state a claim for cruel and unusual punishment.

### C. False Imprisonment (Counts VII - X)

As to plaintiff's claims that he was subject to false imprisonment, defendants argue that the time required to "out-process" plaintiff from the ADC was objectively reasonable and these claims must therefore be dismissed. Defs.' Mem. at 10.

To make out a false imprisonment claim, plaintiff must allege either that he was arrested without probable cause, see Moore v. Fairfax Cnty., Va., 1:07CV410 (LMB/TRJ), 2007 WL 3468657, at *7 (E.D. Va. Nov. 9, 2007), or show that his liberty was restrained without lawful process, Montgomery Ward & Co. v. Wickline, 188 Va. 485, 50 S.E.2d 387, 389 (1948). Here, plaintiff fails to allege either requirement. He affirmatively pleads that he was arrested on a warrant and makes no claim and states no facts plausibly alleging that the warrant was not supported by probable cause. See FAC ¶ 7 ("On January 24, 2012, the Plaintiff was arrested on a Maryland Warrant.").

Moreover, he fails to plead facts establishing an unreasonable delay in his release. In fact, plaintiff admits that once his

8

release process began, it took him 10 minutes to change into street clothes and 20 minutes to complete his release paperwork, see FAC ¶¶ 38-39. Nowhere does he allege facts even suggesting that the ADC's release process was unlawful; rather, he simply alleges that from his perspective, the process took too long. Some period of time is necessary to "out-process" an inmate, and this would be true even if, like Peter, plaintiff had been released from his confinement through divine intervention. See Acts 12:8-9 (New International Version (NIV)) ("Then the angel said to him, 'Put on your clothes and sandals.' And Peter did so. 'Wrap your cloak around you and follow me,' the angel told him. Peter followed him out of the prison."). Plaintiff's pleading is insufficient to state a claim for false imprisonment, and for these reasons that claim will be dismissed.

D. **Failure to Supervise (Count XI)**

As to plaintiff's claim that certain defendants failed to exercise reasonable supervisory authority over other defendants with whom plaintiff interacted, defendants argue that plaintiff has failed to allege facts sufficient to impose supervisory liability under 42 U.S.C. § 1983. Defs.' Mem. at 10-11.

As a general rule, supervisory officials may be held liable under § 1983 only in certain circumstances for the constitutional injuries inflicted by their subordinates. Shaw v. Stroud, 13 F.3d 791, 798

(4th Cir. 1994) (citing <u>Slakan v. Porter</u>, 737 F.2d 368 (4th Cir. 1984)). This liability is not premised on <u>respondeat superior</u>, but upon "a recognition that supervisory indifference or tacit authorization of subordinates misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." <u>Id.</u> at 798 (quoting <u>Slakan</u>, 737 F.2d at 372-73). "[L]iability ultimately is determined 'by pinpointing the persons in the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked.'" <u>Id.</u> To establish supervisory liability under § 1983, a plaintiff must demonstrate:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

<u>Id.</u> at 799 (citations omitted).

Plaintiff alleges no facts demonstrating that supervisory defendants Michael Chapman, Ricky Fry, or Jeffrey Ebersole had actual or constructive knowledge that their subordinates engaged in any conduct that posed a "pervasive and unreasonable risk" of constitutional injury to plaintiff, nor does he allege that they participated personally in the incidents that give rise to his

allegations of any constitutional violation. Therefore, plaintiff states no claim for which relief could be granted against the defendants named in Count XI and that count will be dismissed.

### E. Equal Protection (Counts II, VI, and X)

The Equal Protection Clause of the Fourteenth Amendment protects against arbitrary classifications by state actors. See U.S. Const. amend. XIV, § 1. To bring an equal protection claim, a prisoner must plead sufficient facts to make a threshold showing "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Veney v. Wyche, 293 F.3d 726, 730-31 (4th Cir. 2002) (quoting Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001)). Only after satisfying this threshold requirement will the Court determine whether the disparate treatment at issue was justified. Id. at 731. If plaintiff does not make a threshold showing of disparate treatment, the Court need not assess whether the treatment can be justified under the appropriate level of scrutiny. Ephraim v. Angelone, 313 F. Supp. 2d 569, 573-74 (E.D. Va. 2003); see also Morrison v. Garraghty, 239 F.3d 648, 655 (4th Cir. 2001).

Plaintiff alleges only in the most conclusory fashion that defendants treated him differently than other, white inmates. Plaintiff fails to specify which inmates received disparate treatment, much less whether those inmates were in fact white, and

11

also fails to provide meaningful detail demonstrating that other similarly situated inmates were treated differently or that their allegedly disparate treatment was the result of discriminatory intent.

For example, plaintiff alleges that defendants' delay in providing him medical treatment for his chest pains violated his right to equal protection, but states only that he "was treated differently from white enmates [sic]" and that "[t]he record at ADC will prove that white inmates are treated differently from blacks." FAC at 16-17. The only specific example plaintiff provides is his allegation that Scott Landrum, another inmate, was found dead the morning after he was booked in the ADC "because he [experienced] a medical emergency like the Plaintiff." FAC ¶ 18. Plaintiff further alleges that "[i]f [Landrum] was treated with[] the same deliberate indifference that [sic] the Plaintiff was treated, it cost him his life." Id. Not only does plaintiff fail to specify Landrum's race, but he fails to provide any facts that plausibly establish that either inmate's treatment was the product of defendants' discriminatory intent. Plaintiff's equal protection claims relating to his confinement and alleged false imprisonment fare no better.

Because no threshold showing of an equal protection violation has been made, cf. Veney, 293 F.3d at 730-31, no assessment of whether the treatment plaintiff describes is justifiable is warranted. Ephraim, 313 F. Supp. at 573-74.

12

III. CONCLUSION

For the reasons stated above, plaintiff's motion for leave to amend [Dkt. No. 45] will be GRANTED, defendants' motions to dismiss [Dkt. Nos. 36, 41] will be GRANTED, and this action will be DISMISSED by an appropriate Order to be issued with this Memorandum Opinion.

The Clerk is directed to forward copies of this Memorandum Opinion to counsel of record and plaintiff pro se at his address of record.

Entered this 7th day of January, 2014.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge